WARREN M. GOODSPEED SCHOLARSHIP FUND, BAYBANK MERCHANTS, N.A., TRUSTEE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6725–77X.  Filed June 15, 1978.

*George W. Butterworth III* and *Francis W. Dubreuil,* for the petitioner.

*Bernard B. Kornmehl,* for the respondent.

## OPINION

RAUM, *Judge:* The Commissioner determined that petitioner is a private foundation as defined in section 509(a), I.R.C. 1954. The petitioner has invoked the jurisdiction of this Court, pursuant to section 7428,[1] for a declaratory judgment that it is an organization described in section 509(a)(3) and therefore not a private foundation. The only question is whether petitioner satisfies the organizational test set forth in sections 1.509(a)–4(c)(1)(i) and 1.509(a)–4(c)(2), Income Tax Regs.

This case is submitted for our decision under Rule 122, Tax Court Rules of Practice and Procedure. The joint stipulation as to the administrative record and the administrative record itself were filed by the parties pursuant to Rule 217 of this Court and the factual representations made therein by the petitioner are assumed to be true for purposes of this proceeding.

[1]Petitioner has satisfied the prerequisites for this declaratory judgment action: it has exhausted its administrative remedies, sec. 7428(b)(2); it is the organization the classification of which is at issue, sec. 7428(b)(1); and it filed its petition in a timely fashion, sec. 7428(b)(3). See also Rule 210(c), Tax Court Rules of Practice and Procedure.

Petitioner, the Warren M. Goodspeed Scholarship Fund, is a trust described in section 501(c)(3) and exempt from taxation under section 501(a). It was established pursuant to the Will of Joan R. Goodspeed, who died on April 22, 1964, leaving a will dated October 28, 1955. Her will was allowed and the Merchants National Bank of New Bedford (now known and hereinafter referred to as Baybank Merchants, N.A.) was appointed executor by the Plymouth County Probate Court of the Commonwealth of Massachusetts on June 22, 1964. Baybank Merchants, N.A., was also appointed trustee of petitioner under the will by the Plymouth County Probate Court on November 1, 1966; it maintained its principal offices in New Bedford, Mass., at the time the petition in this case was filed.

Mrs. Goodspeed's will, dated October 28, 1955, constitutes petitioner's "articles of organization" as defined in section 1.501(c)(3)–1(b)(2), Income Tax Regs. The will states, in pertinent part:

I give, devise and bequeath as follows, viz:

1. * * *

2. All the rest, residue and remainder of my estate, of every kind and nature, real, personal and/or mixed and wheresoever situated, including any property over which I may at the time of my decease have any power of appointment, as follows:

A. The sum of * * *

B. To The Merchants National Bank of New Bedford the balance of said rest and residue (including the legacy given by subparagraph "2A" if said Elsie Sylvia fails to survive me or if there is no sufficient evidence that she and I have died otherwise than simultaneously), but in perpetual trust nevertheless for the following uses and purposes and with the following powers and duties, the fund created by this subparagraph "2B" to be known as "The Warren M. Goodspeed Scholarship Fund":

I. To hold, manage, invest and reinvest.

II. To use the net income for the purpose of paying for (or contributing toward, if said net income be not sufficient) the education (including all college fees and charges, room, board, books and supplies) at Yale College of such graduates of Duxbury, Massachusetts, High School or bona fide residents of Duxbury, Massachusetts, as shall be elected by majority vote of a committee composed of the Principal of said Duxbury High School, the President (or Trust Officer) of said The Merchants National Bank of New Bedford and the President of Yale University * * * . No person so selected shall be deemed to have any right, interest or claim against the trust fund or the trustee, this being a "charitable trust".

\* \* \* \* \* \* \*

If at the time for selection of a student:

said Principalship is vacant or the incumbent is unable or unwilling to act, a

person chosen by vote of the Duxbury School Committee shall participate in said selection in place of the Principal,

neither the President nor the Trust Officer of said Bank is able or willing to act or a vacancy exists in both offices, a person chosen by vote of the Board of Directors of said Bank shall participate in said selection in place of either of said Bank officers,

the Presidency of Yale University is vacant or the incumbent is unable or unwilling to act, a person chosen by vote of the governing board of said University shall participate in said selection in place of said President. It is my purpose to provide for the education of Duxbury High School graduates or bona fide Duxbury residents and not to impede the same by prescribing burdensome procedures for the selection of students; therefore no formal meetings of the selectors need be held, a majority of the selectors may act without the concurrence of the third, and the Trustee may rely on a certificate of selection signed by any two persons claiming to be duly qualified selectors without requiring further authentication.

As of February 1976 petitioner's trust fund had a principal value of more than $1 million and its annual net income was in excess of $40,000. Several eligible persons, selected in the manner prescribed in Mrs. Goodspeed's will, had been granted 4-year scholarships to Yale College, where their academic progress was monitored by the trustees. Yale University participated in the selection of scholarship recipients and also requested copies of petitioner's annual reports to the Plymouth County Probate Court for taxable years beginning after December 31, 1971. As of 1976, there was pending in the Plymouth County Probate Court a petition for reformation and amendment of the trust, wherein the trustee was seeking authority to grant scholarships (i) to persons from a wider geographical area than the town of Duxbury, and (ii) to persons attending schools at Yale University other than Yale College.[2]

The petitioner filed an Application for Recognition of Exemption under section 501(c)(3) with the District Director of Internal Revenue, Boston, Mass., on February 10, 1976, and requested therein a definitive ruling that it is not a private foundation because it is an organization described in section 509(a)(3) (hereinafter a supporting organization). On September 1, 1976, the Internal Revenue Service issued a final adverse ruling that petitioner is a private foundation, not a supporting organization described in section 509(a)(3). This adverse ruling

---

[2]The trustee also sought certain other relief, "including appropriate language regarding the prohibitions imposed upon private foundations by the Tax Reform Act of 1969, which would become applicable if [petitioner] is determined not to be a Section 509(a)(3) organization."

was reissued and affirmed by letter dated April 5, 1977, which letter indicated that it "constitutes final notice of [the Commissioner's adverse] determination for purposes of Code section 7428(b)(3)." The basis for the Commissioner's adverse ruling was that petitioner failed to meet the organizational test set forth in sections 1.509(a)–4(c)(1)(i) and 1.509(a)–4(c)(2), Income Tax Regs.[3]

Petitioner, the Warren M. Goodspeed Scholarship Fund, challenges the Commissioner's determination that it is a private foundation as defined in section 509(a), I.R.C. 1954, rather than a supporting organization excepted from the definition of private foundation by section 509(a)(3).

Section 509(a) states, in pertinent part:

SEC. 509. PRIVATE FOUNDATION DEFINED.

(a) GENERAL RULE.—For purposes of this title, the term "private foundation" means a domestic or foreign organization described in section 501(c)(3) other than—

\*       \*       \*       \*       \*       \*       \*

(3) an organization which—

(A) is organized, and at all times thereafter is operated, exclusively for the benefit of, to perform the functions of, or to carry out the purposes of one or more specified organizations described in paragraph (1) or (2),[4]

---

[3]The petitioner argues on brief that the Commissioner's determination was based upon the narrow finding that petitioner was not organized "for the benefit of Yale University," and that no other ground for classifying petitioner as a private foundation is properly before the Court on the basis of this administrative record. We find, however, that the Commissioner's rulings dated Sept. 1, 1976, and Apr. 5, 1977, placed the adverse determination on the more general ground that petitioner did not meet the organizational test stated in secs. 1.509(a)–4(c)(1)(i) and 1.509(a)–4(c)(2), Income Tax Regs. Moreover, counsel for the Government explicitly so stated in the hearing held Oct. 12, 1977, on petitioner's motion for a more definite statement in regard to the Government's answer to the petition.

[4]Paragraphs (1) and (2) read as follows:

(1) an organization described in section 170(b)(1)(A) (other than in clauses (vii) and (viii));

(2) an organization which—

(A) normally receives more than one-third of its support in each taxable year from any combination of—

(i) gifts, grants, contributions, or membership fees, and

(ii) gross receipts from admissions, sales of merchandise, performance of services, or furnishing of facilities, in an activity which is not an unrelated trade or business (within the meaning of section 513), not including such receipts from any person, or from any bureau or similar agency of a governmental unit (as described in section 170(c)(1)), in any taxable year to the extent such receipts exceed the greater of $5,000 or 1 percent of the organization's support in such taxable year,

from persons other than disqualified persons (as defined in section 4946) with respect to the organization, from governmental units described in section 170(c)(1), or from organizations described in section 170(b)(1)(A) (other than in clauses (vii) and (viii)), and

(B) normally receives not more than one-third of its support in each taxable year from the sum

(B) is operated, supervised, or controlled by or in connection with one or more organizations, described in paragraph (1) or (2), and

. (C) is not controlled directly or indirectly by one or more disqualified persons (as defined in section 4946) other than foundation managers and other than one or more organizations described in paragraph (1) or (2)

* * *

The Commissioner's ruling was based exclusively on his determination that petitioner failed to meet the organizational test; that ruling did not raise any issue as to whether petitioner satisfied the operational test of section 509(a)(3)(A).[5] The sole issue properly before us, therefore, is whether petitioner was "*organized* * * * exclusively for the benefit of, to perform the functions of, or to carry out the purposes of" Yale University within the meaning of section 509(a)(3)(A).

The organizational test set forth by section 509(a)(3)(A) is elaborated upon in section 1.509(a)–4, Income Tax Regs., which states in pertinent part:

Sec. 1.509(a)–4. Supporting organizations.

(b) *Organizational and operational tests.* (1) Under subparagraph (A) of section 509(a)(3), in order to qualify as a supporting organization, an organization must be both organized and operated exclusively "for the benefit of, to perform the functions of, or to carry out the purposes of" (hereinafter referred to in this section as being organized and operated "to support or benefit") one or more specified publicly supported organizations. If an organization fails to meet either the organizational or the operational test, it cannot qualify as a supporting organization.

* * * * * * *

(c) *Organizational test.*—(1) *In general.* An organization is organized exclusively for one or more of the purposes specified in section 509(a)(3)(A) only if its articles of organization (as defined in sec. 1.501(c)(3)–1(b)(2)):

(i) Limit the purposes of such organization to one or more of the purposes set forth in section 509(a)(3)(A);

* * * * * * *

(2) *Purposes.* In meeting the organizational test, the organization's purpos-

---

of—

(i) gross investment income (as defined in subsection (e)) and

(ii) the excess (if any) of the amount of the unrelated business taxable income (as defined in section 512) over the amount of the tax imposed by section 511 * * *

[5]The Commissioner has not suggested that petitioner is controlled directly or indirectly by one or more disqualified persons other than foundation managers and other than one or more organizations described in secs. 509(a)(1) and 509(a)(2). See sec. 509(a)(3)(C). Similarly, petitioner does not contend that it is "operated, supervised, or controlled by" Yale University, or that it is "supervised or controlled in connection with" Yale University, sec. 509(a)(3)(B); rather, it has taken the position that it is "operated in connection with" Yale University, and the Commissioner has not challenged the petitioner's position in this respect.

es, as stated in its articles, may be as broad as, or more specific than, the purposes set forth in section 509(a)(3)(A). Therefore, an organization which, by the terms of its articles, is formed "for the benefit of" one or more specified publicly supported organizations shall, if it otherwise meets the other requirements of this paragraph, be considered to have met the organizational test. Similarly, articles which state that an organization is formed "to perform the publishing functions" of a specified university are sufficient to comply with the organizational test. An organization which is "operated, supervised, or controlled by" (within the meaning of paragraph (g) of this section) or "supervised or controlled in connection with" (within the meaning of paragraph (h) of this section) one or more sections 509(a)(1) or (2) organizations to carry out the purposes of such organizations, will be considered as meeting the requirements of this paragraph if the purposes set forth in its articles are similar to, but no broader than, the purposes set forth in the articles of its controlling section 509(a)(1) or (2) organizations. If, however, the organization by which it is operated, supervised, or controlled is a publicly supported section 501(c)(4), (5), or (6) organization (deemed to be a section 509(a)(2) organization for purposes of section 509(a)(3) under the provisions of section 509(a)), the supporting organization will be considered as meeting the requirements of this paragraph if its articles require it to carry on charitable, etc., activities within the meaning of section 170(c)(2).

Mrs. Goodspeed's will, which is petitioner's organizing document, nowhere states in so many words that the trust is established "for the benefit of," "to perform the functions of," or "to carry out the purposes of" Yale University. The only provisions of the will which arguably meet the requirements of sections 1.509(a)–4(c)(1)(i) and 1.509(a)–4(c)(2) are those which require the net income of the trust to be used "for the purpose of paying for * * * the education * * * at Yale College of such graduates of Duxbury, Massachusetts, High School or bona fide residents of Duxbury" as shall be chosen according to procedures set forth in the will.[6] The narrow issue presented by this case, then, is whether such provisions are sufficient to meet the regulations' requirement that petitioner's purposes, *as stated in its articles*, be no broader than those permitted under section 509(a)(3). We hold that Mrs. Goodspeed's will does meet that requirement of the organizational test. Cf. *Elisian Guild, Inc. v. United States*, 412 F.2d 121, 123–124 (1st Cir.).

A simple reading of the will reveals quite clearly, we think, the purpose for which petitioner was established. It was

[6]The other provision of the will which is arguably relevant is the provision stating that the trust is a charitable trust and that, therefore, no scholarship recipient is to have any right, interest, or claim against the trustee or the trust fund.

established so that its income could be used to grant Yale College scholarships to selected students connected with the town of Duxbury, Mass. We see no use in requiring language more specific than that which Mrs. Goodspeed actually used. Her will stated, by its terms, the purpose for which petitioner was established, and that is all the specificity which the organizational test, as set forth in section 1.509(a)–4(c)(2), requires.[7] The regulation does not require that petitioner's organizational document use any specific words.[8]

If there is any objection to the will, we think it must be that petitioner's purpose, *as so stated,* disqualifies it from supporting organization status. Indeed, we suppose it could be argued that petitioner serves the students of Duxbury as much as, or more than, it serves Yale. And since section 509(a)(3)(A) requires that a supporting organization be organized *exclusively* "for the benefit of," "to perform the functions of," or "to carry out the purposes of" the supported institution, it could therefore be argued that petitioner cannot be a supporting organization of Yale because of the substantial collateral benefit conferred upon the class of Duxbury students. On the basis of the peculiar procedural posture of this case, however, we do not reach this argument.

The Commissioner's reissued final determination (dated April 5, 1977) that petitioner is a private foundation, stated:

Your organizationizing [sic] document did not state that you are organized exclusively for the benefit of Yale University. Therefore, you do not meet the "organizational test" as stated in section 501(c)(3) of the Code and section 1.509(a)–4(c)(2) of the Income Tax Regulations.

That determination was open to the fair interpretation that all that was necessary for petitioner to satisfy the organizational test was to amend the organizing document (presumably by application to the Massachusetts courts for reformation) so that it would contain the words "organized exclusively for the benefit

---

[7]This is not a case where the organizing document granted the organization powers which, although in fact unused, were sufficient to destroy the organization's exemption or render it a private foundation. See sec. 1.509(a)–4(c)(3); sec. 1.501(c)(3)–1(b)(1)(iii); *Waller v. Commissioner,* 39 T.C. 665, 674–675.

[8]This is also not a case where there is a question as to the identity of the organization allegedly supported: the Commissioner admits that Yale University is specified in the will as the public supported organization. See sec. 1.509(a)–4(d)(4). Compare Rev. Rul. 75–437, 1975–2 C.B. 218, 219. (As noted above, petitioner claims to be "operated in connection with" Yale University for purposes of the organizational test. Compare Rev. Rul. 75–436, 1975–2 C.B. 217.)

of Yale University," or some similar words, without in any way eliminating the provisions limiting the Yale scholarships to graduates of Duxbury High School or bona fide residents of Duxbury. The petition to this Court admitted that the will did not "state *in haec verba* that petitioner is 'organized exclusively for the benefit of Yale University,'" and alleged that respondent's adverse ruling was based on this fact. The respondent's answer denied this latter allegation, whereupon petitioner filed a "Motion For More Definite Statement," seeking to ascertain whether the basis for the Commissioner's adverse ruling as to the organizational test was the absence of the words in haec verba that it was "organized exclusively for the benefit of Yale University." A hearing on that motion was held before Special Trial Judge Johnston of this Court, in which Government counsel disclosed that it was not insisting upon that language in haec verba, but that it was insisting only that there be "words of similar import." (Transcript, p. 5.) The following colloquy at that hearing makes the matter clear beyond dispute (transcript, p. 8):

THE COURT: All right. Now, that is what you—you say, "You are organized, but you did not state you were organized exclusively for the benefit of Yale University," is that what you rely on, because it didn't state that?

MR. KORNMEHL [respondent's counsel]: That it didn't state that, or words to that import, to import that meaning.

THE COURT: You mean the mere fact that it didn't state in so many words it was for the benefit of Yale University, that is what you are relying on?

MR. KORNMEHL: Correct.

And again, at page 12 of the transcript, the following appears:

THE COURT: I mean, is there any doubt that Yale University is intended to be the university to benefit from this trust that is created?

MR. KORNMEHL: Well, the Respondent's argument is that it did not meet the organizational test by specifically stating in the will, which is the articles in this case, that *that* is the case. It has to be very specific. [Emphasis supplied.]

The Court then granted petitioner's motion for more definite statement, and the Government filed an amendment to the answer in which in this respect it denied merely that the adverse ruling on the organizational test was based upon an in haec verba requirement.

Petitioner's opening brief contained the following allegation:

Treasury Regulations section 1.509(a)–4(c)(2), the regulatory provision upon which the Ruling is based and upon which the Respondent relies for support of

his position in this action, certainly makes clear, and the Respondent presumably would concede, that if the will of Joan R. Goodspeed stated, *in haec verba* that the Petitioner was formed "for the benefit of" Yale University, then the organizational test would be met.

The Government did not challenge this statement in its reply. Moreover, the Government stated in its opening brief:

To meet the requirements of the "organizational test" petitioner must merely amend its articles of organization to conform with Treas. Reg. section 1.509(a)–4(c)(2).

Again in its reply, the Government stated:

Petitioner can easily amend its articles of incorporation to comply with the organizational test of section 509(a)(3)(A). *See* Opening Brief for Respondent p. 12. Thus, the burden on petitioner to meet the objective organizational test of I.R.C. section 509(a)(3) is minimal.

The issue posed, then, was whether *additional* language respecting Yale University was required in the will. Nowhere do we find it argued that the provisions of the will limiting the class of beneficiaries to Duxbury students *substantively and by themselves* disqualify the trust from supporting organization status on account of the benefit thereby conferred upon the class of Duxbury students. Additional language respecting Yale could not have cured such a substantive disqualifying factor. And an amendment to the will removing the limitation on behalf of Duxbury students can hardly be characterized as a "minimal" burden on petitioner.

The Government, in both its original and its reply briefs, did argue that Mrs. Goodspeed's will was ambiguous as to whether petitioner was organized for the benefit of Yale University or for the benefit of Duxbury students. It particularly relied in this respect on the statement in the will that "it is my purpose to provide for the educatin of Duxbury High School graduates or bona fide Duxbury residents," and requested, as a finding of fact, the following: "Mrs. Goodspeed's purpose in establishing the Warren M. Goodspeed Scholarship Fund was 'to provide for the education of Duxbury High School graduates or bona fide Duxbury residents.' " Mrs. Goodspeed's personal motives, however, do not control the determination of whether petitioner meets the organizational test of section 509(a)(3)(A), and we hold that her will sets forth petitioner's objective purposes with adequate specificity to permit application of the organizational

test, that is, to permit a determination as to whether its purposes are within the class of permitted purposes. We refuse to reinterpret the Government's ambiguity argument as an argument that petitioner substantively violates the exclusivity element of the organizational test. Such a substantive argument simply cannot be reconciled with the Government's repeated assertion that the will failed the organizational test only because it failed to *state*, in haec verba or in so many words, that petitioner was organized exclusively for the benefit of Yale.

The Government nowhere contended—at least as we have been able to interpret its position in a confused procedural setting — that the limitation of Yale scholarships to Duxbury students would by itself prevent petitioner from satisfying the organizational test *provided that* the organizing document stated with specificity (in any form of words) that petitioner was organized exclusively for the benefit of Yale University. Thus, what the Government was insisting upon was a form of words, which in our judgment is not required in the circumstances of this case in order to satisfy the organizational requirements. It has never been explained to us how the addition of the words (or their equivalent) upon which the Government insists would in any way affect or further limit the powers or permissible scope of petitioner's operations in this case. We do not mean to suggest that the Government may not properly insist upon words in an organizing document that effectively confine the foundation's activities within permissible statutory limits. But viewing the present case in the light of its procedural setting, we cannot conclude that the addition of language of the sort upon which the Government insists would be a matter of any consequence. Indeed, even if such language were added, it might still be possible to argue that the organizational requirements would not be met because of the benefits to Duxbury students, regardless of the verbiage stating that petitioner was organized exclusively for the benefit of Yale. But no such issue is before us, and we express no opinion upon it. A fair reading of the Government's position throughout this litigation leads to the conclusion that the only matter in dispute is its insistence upon the addition of certain verbiage (or its equivalent) which has not been shown to be of any practical consequence whatever on petitioner's powers or permissible scope of operations. We hold

that such additional verbiage is not required in the context of this case.

*Decision will be entered for the petitioner.*