**TAXATION WITH REPRESENTATION,**
Appellant,

v.

**UNITED STATES of America, Appellee.**

No. 76–2418.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 8, 1977.
Decided Oct. 30, 1978.

John Cary Sims, Washington, D. C. (Alan B. Morrison, Washington, D. C., on brief), for appellant.

Leonard J. Henzke, Jr., Atty., Tax. Div., Dept. of Justice, Washington, D. C. (Myron C. Baum, Acting Asst. Atty. Gen., Gilbert E. Andrews, Atty., Tax Div., Dept. of Justice, Washington, D. C., William B. Cummings, U. S. Atty. and James R. Hubbard, Asst. U. S. Atty., Alexandria, Va., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and FIELD, Senior Circuit Judge.

FIELD, Senior Circuit Judge:

The appellant, Taxation With Representation, Inc., (TWR), filed this action for the refund of $378.29 paid with respect to the tax periods 1973–1975 under the Federal Unemployment Tax Act (FUTA). The complaint alleged that TWR is an educational or charitable organization under Section 501(c)(3) of the Internal Revenue Code of 1954 [1] and, accordingly, is exempt from

---

1. During the period here in question which was prior to the 1976 Amendments to the Internal Revenue Code, 26 U.S.C. § 501(c)(3) read as follows:

(c) *List of exempt organizations.*—

(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, and which does not participate in, or

FUTA taxes under Section 3306(c)(8) of the Code. In seeking the refund, the sole issue raised by TWR is the constitutionality of the restriction on lobbying contained in Section 501(c)(3). TWR charges that such a proscription violates its rights of free speech and petition under the First Amendment and denies it the equal protection of the law under the Fifth Amendment. The district court granted the Government's motion for summary judgment and ordered the case dismissed. TWR has appealed.

TWR was incorporated under the District of Columbia Non-profit Corporation Act on July 14, 1970, and its purposes and powers were stated in the articles of incorporation, in part, as follows:

> *Purposes and Powers.* (a) The purposes for which the corporation is organized and shall operate are as follows:
>
> To promote social welfare within the meaning of Section 501(c)(4) of the Internal Revenue Code of 1954 (or the corresponding provisions of any future United States Internal Revenue Law) and the regulations pertaining thereto as they now exist or may hereafter be amended.
>
> (b) In pursuance of its purposes the corporation is authorized and empowered to do any and all lawful acts and things consistent therewith including, but without limitation:
>
> To promote the common good and general welfare of the people of the Unit-

ed States by appearing on behalf of the public at legislative and administrative hearings on Federal tax matters and by assisting members of the academic community in presenting their views at such hearings.

On August 20, 1970, TWR filed an application with the Internal Revenue Service seeking exemption under Section 501(a) as an organization described in Section 501(c)(4) of the Code.[2] The application for exemption stated its primary activity as follows:

> Taxation with Representation is a public interest lobby that deals solely with Federal tax issues. Its goal is to make sure that the general public is represented by skilled professionals when tax issues are under discussion in Congress and in the Executive Branch.

In a ruling letter dated January 28, 1971, the Internal Revenue Service advised TWR that it was exempt from Federal income taxes under the provisions of Section 501(c)(4). While this ruling gave TWR the benefit of exemption from Federal income taxes, nevertheless, in such a posture it was liable for unemployment (FUTA) taxes and was also ineligible for tax deductible contributions under Section 170 of the Code.[3]

Exemption from FUTA taxes as well as the advantage of tax-deductibility under Section 170 could be obtained by the taxpayer only by qualifying as an "educational" or "charitable" organization under Sec-

---

intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.

**2.** 26 U.S.C. § 501(c)(4) reads as follows:

Civic leagues or organizations not organized for profit but operated exclusively for the promotion of social welfare, or local associations of employees, the membership of which is limited to the employees of a designated person or persons in a particular municipality, and the net earnings of which are devoted exclusively to charitable, educational, or recreational purposes.

**3.** Prior to the 1976 Amendments to the Internal Revenue Code, 26 U.S.C. § 170(c)(2) read as follows:

*Charitable contribution defined.*—For purposes of this section, the term "charitable con-

tribution" means a contribution or gift to or for the use of—

(2) A corporation, trust, or community chest, fund, or foundation—

(A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States;

(B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes or for the prevention of cruelty to children or animals;

(C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and

(D) no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation.

tion 501(c)(3), and in 1974 TWR applied to the Service for recognition of such an exemption under that section of the Code. By letter dated June 17, 1974, the Service notified TWR that it did not qualify for exemption under Section 501(c)(3) since it was neither organized nor operated exclusively for exempt purposes.[4] The ruling letter concluded as follows:

> An analysis of your organizational purpose indicates that you are not organized exclusively for educational, charitable or other exempt purposes as required under section 501(c)(3) of the Code. Further, your primary activities demonstrate that you are an "action" organization as described in the above cited regulations. Consequently, we rule that you are neither organized nor operated exclusively for exempt purposes under section 501(c)(3) of the Code. However, this letter does not affect the ruling issued to you on January 28, 1971, which recognized you as being exempt from Federal income tax under section 501(c)(4) of the Code. In accordance with that ruling, contributions to you are not deductible by the donors under section 170(c)(2) of the Code. .

TWR subsequently filed claims for refunds of the FUTA taxes which it had paid and when they were disallowed filed this action.

In granting the Government's motion for summary judgment, the district court concluded that TWR had failed to meet the organizational test of Section 501(c)(3), holding that the corporation's purposes as stated in its charter must be expressly limited to those permissible under that section of the Code. Observing, however, that both parties apparently desired appellate review of the constitutional question, the district

judge addressed that issue and held that the lobbying ban of Section 501(c)(3) did not violate the constitutional rights of TWR under either the First or the Fifth Amendments. The Government suggests that it is unnecessary for us to reach the constitutional issue since the failure of appellant to meet the organizational test in itself required the dismissal of the complaint.

■ Concededly, the statute and regulations require that a corporation be both organized and operated exclusively for the specified purposes, and the failure to meet either of these requirements is fatal to a tax exempt status. *C.I.R. v. John Danz Charitable Trust,* 284 F.2d 726 (9 Cir. 1960); Treas.Reg. 1.50(c)(3)–1(a)(1). However, in applying the organizational test, a court is not necessarily bound by the recitals in the certificate of incorporation, and in an appropriate case may look beyond the four corners of the creating instrument and consider extrinsic evidence.

> To grant or deny tax benefits to organizations upon a basis of recitations in a charter or certificate would not seem to accomplish what Congress was getting at. The issue of "organized," * * * is primarily a question of fact not to be determined merely by an examination of the certificate of incorporation but by the actual objects motivating the organization and the subsequent conduct of the organization. To some degree, "organized" cannot be divorced from "operated," for the true purposes of organization may well have to be drawn in final analysis from the manner in which the corporation has been operated.

*Samuel Friedland Foundation v. United States,* 144 F.Supp. 74, 85 (D.N.J.1956). *See also,* 6 J. Mertens, *The Law of Federal*

---

**4.** The organizational tests prescribed by the Treasury Regulations require that the articles of incorporation limit the purposes to those which are exempt, Treas.Reg. § 1.501(c)(3)–1(b)(1)(i)(a), and that they do not expressly empower the organization to engage in activities which are not in furtherance of exempt purposes unless they are an insubstantial part of the organization's activities. Treas.Reg. § 1.501(c)–1(b)(1)(iii). The regulations further specify that an organization is not organized

exclusively for one or more exempt purposes if its articles expressly empower it to devote a substantial part of its activities to attempting to influence legislation by propaganda or otherwise, or if it is engaged in activities which characterize it as an "action" organization. Treas.Reg. § 1.501(c)(3)–1(b)(3)(i) and (iii). An organization is an "action" organization if a substantial part of its activities is attempting to influence legislation by propaganda or otherwise. Treas.Reg. § 1.501(c)(3)–1(c)(3)(ii).

*Income Taxation* § 34.07, at 27 (1975). TWR contends that under this doctrine of liberality the organizational test should not be inflexibly applied in this case. TWR asserts that because of its lobbying activities it was barred on the face of the statute from receiving a 501(c)(3) exemption and, accordingly, its only alternative was to incorporate as a 501(c)(4) organization. It urges upon us that under these circumstances it should not be denied an adjudication on the merits of its constitutional claims solely because it has failed to pass what it describes as a "purely formal test."

■ Unquestionably, the record discloses that from the time of its incorporation TWR has doggedly tried to obtain a determination of the constitutional issues raised by it, and the Internal Revenue Service has been well aware of its position. In rejecting TWR's 1975 refund claim, the Service stated that the claim was based on the taxpayer's view that the statute was unconstitutional and observed that "[o]nly the courts have authority to pass on such matters." And the Department of Justice had indicated in a letter to TWR that the constitutional question could "be properly litigated in a refund suit." Now the government contends, however, that such a refund suit is barred because TWR failed to formally "organize" under Section 501(c)(3). It is clear, of course, that TWR could not meet the "substantial legislative activities" precept of the statute, and under the government's theory it would appear that unless TWR was willing to draft its charter with something less than corporate candor, the merits of its constitutional claims could never be reached. We recognize that in the ordinary case where the issue is whether a corporation has met the statutory criteria *vel non,* a reasonable administrative purpose is served by relieving the Service of the obligation to look beyond the formal organization papers. However, where the only issue presented is the constitutionality of the statute, we do not think that administrative or procedural technicalities should preclude the plaintiff from an adjudication on the merits. *Cf. Mathews v. Diaz,* 426 U.S. 67, 76, 96 S.Ct. 1883, 48 L.Ed.2d 478

(1976); *Weinberger v. Salfi,* 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

■ Turning to the constitutional questions, in support of its First Amendment argument the plaintiff relies primarily upon *Speiser v. Randall,* 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), where the Court held that a California statute which required a loyalty oath as a condition for a property tax exemption was violative of procedural due process. However, in the context of the issue before us, we agree with the government that *Speiser* is inapposite and that this case is controlled by *Cammarano v. United States,* 358 U.S. 498, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959), where the Court upheld a regulation under the Internal Revenue Code of 1939 which excluded from deductions as "ordinary and necessary business expenses" any amounts which had been expended "for the promotion or defeat of legislation." The Court, noting that *Speiser* was irrelevant, stated:

> Petitioners are not being denied a tax deduction because they engage in constitutionally protected activities, but are simply being required to pay for those activities entirely out of their own pockets, as everyone else engaging in similar activities is required to do under the provisions of the Internal Revenue Code. Nondiscriminatory denial of deduction from gross income to sums expended to promote or defeat legislation is plainly not " 'aimed at the suppression of dangerous ideas.' " 357 U.S., at 519, 78 S.Ct. 1332. Rather, it appears to us to express a determination by Congress that since purchased publicity can influence the fact of legislation which will affect, directly or indirectly, all in the community, everyone in the community should stand on the same footing as regards its purchase so far as the Treasury of the United States is concerned.

358 U.S., at 513, 79 S.Ct., at 533. In our opinion, *Cammarano* makes it clear that plaintiff's freedom of speech and right to petition Congress are not impaired by the lobbying proscriptions of Section 501(c)(3) and Section 170(c)(2). *See Haswell v. Unit-*

*ed States,* 500 F.2d 1133, 205 Ct.Cl. 421 (1974).

TWR also contends that its equal protection rights under the Fifth Amendment are denied because Sections 170(c)(3) and (4) permit veterans organizations and fraternal societies to lobby and still enjoy tax benefits, including the right to receive tax-deductible contributions. We find no merit in the plaintiff's constitutional argument on this point. First of all, we note that contributions to fraternal societies are deductible only when they are used for certain charitable and specified purposes. With respect to veterans organizations, we agree with the government that the unique and compelling societal and governmental goals served by these organizations provide ample justification for the special tax treatment extended to them by the Congress. On the other hand, Congress has a legitimate interest in preventing individuals from making tax-deductible contributions to finance lobbying activities through the means of charities which are exempt from taxes. Assuredly, there is a reasonable basis for the classifications about which the plaintiff complains.

Accordingly, although we disagree with the district court's primary basis of decision, the judgment is affirmed.

AFFIRMED.

WINTER, Circuit Judge, concurring and dissenting:

While I agree with the majority both that TWR sufficiently satisfied the organizational test to permit it to litigate the case on its merits and that the first amendment does not require Congress, by favorable tax treatment, to subsidize lobbying activities, I cannot join in the holding that the district court correctly entered summary judgment for the government on the equal protection claim. I respectfully dissent.

I.

This is a first amendment case. It seems conceded by all that lobbying activities—the right of petition—come within the pro-

tection of the first amendment. *See Eastern R.R. Conference v. Noerr Motor Freight,* 365 U.S. 127, 137–38, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *Cammarano v. United States,* 358 U.S. 498, 512–13, 79 S.Ct. 524, 3 L.Ed.2d 462 (1959). *See also First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Nor do I think that there is any question but that the granting or withholding of favorable tax treatment of contributions on a selective basis because of the substantiality of lobbying activities on the part of the recipient is a regulation of a first amendment right. *See Speiser v. Randall,* 357 U.S. 513, 518, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

*Cammarano* held valid treasury regulations disallowing the deduction from gross income of sums expended for lobbying purposes and sums spent for the promotion or defeat of legislation as "ordinary and necessary" business expenses. *Cammarano* did so, however, in the context of a blanket, nondiscriminatory prohibition applicable to all corporations and individuals. *"Nondiscriminatory* denial of deduction from gross income to sums expended to promote or defeat legislation is plainly not 'aimed at the suppression of dangerous ideas.' " 358 U.S. at 513, 79 S.Ct. at 533 (quoting *Speiser v. Randall,* 357 U.S. at 519, 78 S.Ct. 1332) (emphasis supplied).

Since *Cammarano* was decided, Congress has not maintained an attitude of nondiscriminatory tax treatment with respect to lobbying. Congress enacted 26 U.S.C. § 162(e) permitting taxpayers to deduct from gross income as "ordinary and necessary" business expenses certain lobbying expenses, excluding participation in the political campaign of a candidate for public office and efforts to influence the general public with respect to legislative matters, elections and referenda, if those expenses were incurred in the course of trade or business.

The same deduction is afforded to the portion of dues of members of organizations attributable to lobbying expenses. I understand this to be the dues of members of labor unions and trade associations to the

extent that the dues are expended for permitted lobbying activities. More in point, Congress amended 26 U.S.C. § 170 to provide that charitable contributions made to organizations, a substantial part of the activities of which is lobbying, may receive favorable tax treatment if the organization is (a) a nonprofit organization of war veterans or an auxiliary unit, society, trust or foundation for such organization, or (b) a domestic fraternal society, order or association, operating under the lodge system. In the case of a gift to the latter, there is a special restriction that the gift to be deductible by the donor must be made by an individual and the gift must be used by the donee exclusively for religious, charitable, scientific, literary or educational purposes, or for the prevention of cruelty to children or animals.

If we leave aside the favorable tax treatment of the portion of dues of members of organizations attributable to lobbying activities, the question before us thus becomes one of whether it is an unconstitutional discrimination for Congress to subsidize the lobbying activities of veterans' organizations and domestic fraternal societies while declining to subsidize the lobbying activities of TWR, an otherwise tax-exempt charitable corporation which would qualify to receive tax-exempt gifts but for its desire to press the ideas that it advocates before legislative bodies. The government argues that the answer is in the negative with respect to fraternal organizations because the favorable tax treatment is accorded only to gifts used for charitable purposes. The government argues that the answer is in the negative with respect to veterans' organizations because they "serve useful societal goals which have been historically, and probably necessarily, dependent in large part on governmental action . . . [and] the compelling governmental and societal goals and problems dealt with by veterans' organizations required more leeway for lobbying activities in some cases." The majority opinion tracks the government's argument, but I am unpersuaded.

First, the rationale advocated by the government and adopted by the majority is the rational basis test, inappropriate for a case of this nature. As the latest in a long line of decisions, *First National Bank of Boston v. Bellotti* holds that discriminations of the type with which we are concerned can be sustained only if they survive "exacting scrutiny" and are justified by a "compelling state interest." 435 U.S. at pp. 786, 787, 98 S.Ct. 1407. Additionally, with respect to fraternal organizations, the government's argument in essence is that the subsidization of lobbying activities is limited because the lobbying must be for religious, charitable, scientific, literary or educational purposes, etc. The argument is thus as to the quantum of the subsidy; it avoids the justification, if any, for the discrimination between fraternal organizations and TWR. With respect to veterans' organizations, I find nothing in the record to support the finding that the governmental and societal goals and problems dealt with by veterans' organizations are more deserving of subsidy than the governmental goals and problems of taxation with which TWR seeks to deal. Even if I assume that there may be differences sufficiently compelling to justify rendering contributions to veterans' organizations tax deductible, while denying such favorable treatment to contributions to TWR, this record does not disclose them. As a result, I think summary judgment inappropriate. I would vacate the judgment and remand the case in order to put the parties to their proof.

What I fear that Congress has done since *Cammarano* is to run afoul of the teaching of *Police Department of Chicago v. Mosley*, 408 U.S. 92, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972). That case held invalid on equal protection grounds an ordinance that prohibited picketing near a school while the school was in session and for a short period before and after the school session, but exempted from the prohibition picketing of any school involved in a labor dispute. The theory of decision was that while all picketing may be regulated where necessary, "[b]ecause picketing plainly involves expressive conduct within the protection of the First Amendment . . . ., discrimi-

nations among pickets must be tailored to serve a substantial governmental interest." 408 U.S. at 99, 92 S.Ct. at 2292. *See also First National Bank of Boston v. Bellotti,* 435 U.S. at p. 784, 98 S.Ct. 1407 (slip opinion, pp. 18–19). If my premise is correct that the favorable tax treatment afforded to contributions and gifts to fraternal organizations and veterans' organizations and the unfavorable tax treatment afforded to contributions and gifts to other nonprofit charitable organizations by reason of their lobbying activities is a regulation on the exercise of the right to petition, certainly the government bears a heavy burden to justify encouragement of the right to express the views of one and discouragement of the right to express those of the other. Although I have yet to be persuaded that that burden can be met, I would afford the government the opportunity to meet it.