PEOPLES TRANSLATION SERVICE/NEWSFRONT INTERNATIONAL, A CALIFORNIA NON-PROFIT CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12597–77X.     Filed April 4, 1979.

*Robert J. Donovan,* for the petitioner.
*Elizabeth D. De Priest* and *Jeanne P. Daly,* for the respondent.

---

OPINION

FEATHERSTON, *Judge:* Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(c)(3).[1] Petitioner challenges respondent's determination and has invoked the jurisdiction of this Court for a declaratory judgment pursuant to section 7428.

The issue presented for decision is whether petitioner is organized and operated exclusively for charitable, educational, religious, or scientific purposes within the meaning of section 501(c)(3).

This case was submitted for decision on the stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure.[2] For purposes of this proceeding, the facts and representations contained in the administrative record are assumed to be true. Rule 217, Tax Court Rules of Practice and Procedure.

Petitioner was incorporated on August 15, 1975, under the General Nonprofit Corporation Law of the State of California. Its principal place of business is Oakland, Calif. On October 1, 1976, the State of California Franchise Tax Board granted petitioner exemption from State franchise and income tax as a charitable and educational organization; the exemption was effective August 15, 1975. Petitioner's articles of incorporation were amended on November 15, 1976.

On March 3, 1977, the initial application for recognition of exemption under section 501(c)(3) was filed with the San Francisco District Office of the Internal Revenue Service. On October 28, 1977, respondent issued a final adverse ruling letter which denied petitioner an exemption under section 501(c)(3). The exemption was denied on the grounds that petitioner is not limited to exempt purposes by its articles of incorporation and that its operations are conducted in a manner similar to that of a commercial enterprise.

According to the amended articles of incorporation, petitioner's "specific and primary purposes" are:

---

[1]All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise noted.

[2]On Mar. 2, 1978, after the answer was filed and before the administrative record was stipulated, petitioner filed a motion to invoke discovery under Rule 217, Tax Court Rules of Practice and Procedure. Following a hearing, the Court denied petitioner's motion without prejudice to renew on Apr. 7, 1978. An order to show cause, issued Aug. 18, 1978, was made absolute by an order dated Sept. 20, 1978.

(i) To increase understanding between the people of the United States and people of other nations.

(ii) To increase the intellectual and other contacts and understanding among the peoples of the world.

(iii) To make available information about opinions and events throughout the world by translating information from foreign news agencies and other sources.

(iv) To provide readily available resources for students and scholars, and the community in general.

As "general purposes and powers," petitioner possesses—

all rights and powers conferred on nonprofit corporations under the laws of California, including the power to contract, rent, buy, or sell personal or real property, provided, however, that this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the primary purposes of this corporation.

The amended articles further provide that the corporation "does not contemplate pecuniary gain or profit to the members thereof and it is organized for nonprofit purposes" and that "no part of the net income or assets of this organization shall ever inure to the benefit of any director, officer, or member thereof or to the benefit of any private individual." Upon dissolution, assets remaining after payment of debts are to be distributed to a charitable and educational organization exempt under section 501(c)(3).

The amended articles also contain the following prohibition:

No substantial part of the activities of this corporation shall consist of carrying on propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign (including the publishing or distribution of statements) on behalf of any candidate for public office.

Petitioner's activities consist of publishing a biweekly bulletin of translations from the foreign press, translating individual articles, some of which have been compiled in a pamphlet, and maintaining a library of translated and untranslated materials.

Petitioner obtains copies of foreign journals in exchange for its bulletin and from these sources selects items to be translated and printed in the bulletin. A stated criterion for selection is that the material be unavailable in English through commercial publications. Petitioner also considers interest in the material on the part of members and the community as well as availability of translators. The subject matter of the bulletin has been described by petitioner as the "labor movement in Western

Europe, national liberation movements, women, soldier, prisoner, and student movements."

Issues of the bulletin included in the administrative record contain several articles which consist of statements by individuals or groups. Other articles are interviews, generally in a question-and-answer format. The bulletin also contains conventional journalistic accounts, sometimes compiled from more than one source. Items in the bulletin represent publications from Britain, France, Italy, Mexico, Spain, and West Germany. Two articles are accounts written by the bulletin's own correspondents.

Petitioner's officers and directors are each familiar with at least two languages and can perform the clerical work and typing required to publish the bulletin. Translations are undertaken by volunteers. Although at present the office staff serves without pay, petitioner hopes to pay salaries to the staff in the future. The bulletin contains no advertising. Petitioner neither pays nor receives royalties. Since all material is intended for the public domain, it does not obtain copyrights.

In 1976, the bulletin had a circulation of 500 issues. It is sold on a subscription basis at the following rates:

Individuals ..............$6 for 12 issues or $12 for 24 issues
Nonprofit media .......$30 per year
Libraries and
  institutions ..............$35 per year

Free copies are given those who state they cannot afford to pay the subscription rates. Individual translations are provided free to serious students. The library is open to the public without charge.

During the fiscal year ended August 31, 1976, petitioner's principal sources of financial support were:

Subscriptions and sales of translated
  documents ................................................ $4,127.37
Grant from University of California,
  Berkeley Community Projects Office ................. 1,802.66
Other donations ............................................ 776.48
                                                                  6,706.51

Petitioner's major expenditures for the fiscal year ended August 31, 1976, were:

Cost of production of published   materials ........... $5,569.52
Rent ........................................................... 1,110.20
Utilities ....................................................... 24.42
Advertising .................................................. 23.20
State Franchise Board application and
   filing fees ................................................. [1]215.00
                                                                _____
                                                                6,942.34

---

[1]Respondent claims that petitioner is entitled to deduct only $15 for this item. According to petitioner, the State refunded $200 after the board granted petitioner exempt status. Since the amount was refunded after the close of the fiscal year, petitioner asserts that it was proper to deduct the full amount of the initial outlay in the fiscal year ended Aug. 31, 1976.

### Petitioner summarizes its purposes and policies as follows:

PTS does not take any particular position. It strives to preach no particular view. The aim is simply to make available material thought to be important which is not available elsewhere in English. Thus the American people can have a greater opportunity for direct perception of the thoughts and beliefs of people in other parts of the world. PTS believes that by so assisting the flow and interchange of ideas it can increase understanding and harmony among the people of the world. Some of its services primarily serve the academic community around the University of California but this is believed to serve the same goal because it assists students, including future American and foreign leaders, to have a better understanding of the diverse currents of thought which flow in the various countries of the world.

An organization is exempt from income tax under section 501(a) and (c)(3) if it is organized and operated exclusively for exempt purposes; if no part of its net earnings inures to the benefit of any shareholder or individual; and if a substantial part of its activities is not devoted to political or lobbying activities. The first requirement, the only one at issue here, is fulfilled only if both the organizational and operational tests are met. Sec. 1.501(c)(3)–1(a)(1), Income Tax Regs. The organizational test requires, in pertinent part, that the articles of organization[3] limit the organization to one or more exempt purposes and not expressly authorize it to undertake, except as an insubstantial part of its activities, activities which do not further one or more exempt purposes. Sec. 1.501(c)(3)–1(b)(1), Income Tax Regs. The operational test is satisfied if the organization

---

[3]The term "articles of organization" is defined to include "the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created." Sec. 1.501(c)(3)–1(b)(2), Income Tax Regs.

engages primarily in activities which further one or more of the exempt purposes specified in section 501(c)(3) and if it does not engage, except to an insubstantial degree, in activities which do not accomplish an exempt purpose. Sec. 1.501(c)(3)–1(c)(1), Income Tax Regs.

The regulations enumerate the following exempt purposes: religious, charitable, scientific, testing for public safety, literary, educational, and prevention of cruelty to children or animals. Sec. 1.501(c)(3)–1(d)(1), Income Tax Regs. "Educational" is defined as relating to the instruction either of the individual to improve his capabilities or of the public on subjects "useful to the individual and beneficial to the community." Sec. 1.501(c)(3)–1(d)(3), Income Tax Regs.

In the final ruling letter and on brief, respondent advanced the following grounds for denying petitioner exempt status:

> You are not organized exclusively for exempt purposes because your Articles of Incorporation do not limit your purposes to one or more exempt purposes within the meaning of section 501(c)(3).
>
> Your operations are conducted in a manner that is essentially similar to a commercial enterprise, and, thus, you do not meet the requirements under section 501(c)(3) of the Internal Revenue Code of 1954.

To prevail, petitioner must prove respondent's determination incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner,* 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. We find that petitioner has sustained its burden.

### 1. *The Organizational Test*

According to respondent, petitioner fails the organizational test because its articles of incorporation do not limit it to exempt purposes. On brief, he argues that petitioner's power to publish and distribute a magazine may forward a nonexempt commercial purpose. On reply brief, he instead asserts that petitioner has not shown that its activities further an educational, or any other exempt, purpose.

Except to an insubstantial and permissible degree, petitioner's amended articles limit its purposes to the furtherance of its primary purposes. Its "specific and primary purposes" are couched in broad terms. Those of "mak[ing] available information" and "provid[ing] readily available resources" could be read not to preclude a commercial purpose. Yet the same articles

prohibit private gain, one factor indicative of a commercial purpose. E.g., *Christian Manner International, Inc. v. Commissioner*, 71 T.C. 661 (1979). A fair reading of the articles indicates that the organization is limited to the exempt educational purpose. Compare *Elisian Guild, Inc. v. United States*, 412 F.2d 121, 122–123 (1st Cir. 1969).

It is well settled that:

The issue of "organized" * * * is primarily a question of fact not to be determined merely by an examination of the certificate of incorporation but by the actual objects motivating the organization and the subsequent conduct of the organization.

*Taxation With Representation v. United States*, 585 F.2d 1219, 1222 (4th Cir. 1978); *Samuel Friedland Foundation v. United States*, 144 F.Supp. 74, 85 (D. N.J. 1956). Courts have therefore looked outside the articles and held that the mere existence of power to engage in activities other than those set out in section 501(c)(3) does not in itself prevent petitioner from meeting the organizational test. *General Conference of the Free Church of America v. Commissioner*, 71 T.C. 920 (1979); *John Danz Charitable Trust v. Commissioner*, 32 T.C. 469, 477 (1959), affd. 284 F.2d 726 (9th Cir. 1960). As we discuss below, there is no evidence of such a purpose in the administrative record.

In support of his contention that broad language of the articles disqualifies petitioner, respondent cites *Santa Cruz Building Ass'n v. United States*, 411 F.Supp. 871 (E.D. Mo. 1976). There the Court found the charter too broad because it explicitly provided for the nonexempt purpose of "promot[ing] better relations amongst * * * [the association's] members, to provide grounds, buildings and equipment for educational, recreational and physical activities for the members." *Santa Cruz Building Ass'n v. United States*, supra at 882. Petitioner's articles, in contrast, present no such clear contravention of the organizational test.

We hold that petitioner's purposes as stated in its amended articles qualify as educational within the meaning of section 501(c)(3).

## 2. *Manner of Operation*

Throughout the administrative process, respondent has denied exempt status, in part, on the ground that petitioner is operated

for a substantial commercial purpose. Although conceding that petitioner's operations have been unprofitable to date, respondent contends that they are conducted in an ordinary commercial manner. In support of this argument, he notes that the bulletin charges subscription rates, advertises, and hopes to pay its staff in the future. He also characterizes member loans to the organization as contributions to capital.

In reply, petitioner observes that organizations charging for publications have repeatedly been granted exempt status and that its rates are set below cost. Moreover, it points out that it provides free translations on request, maintains a free public library, offers its bulletin free to those who cannot afford the below-cost subscription rate, operates with an unpaid volunteer staff, and depends on contributions and grants to defray operating costs. We agree with petitioner that these factors and others, taken together, distinguish it from organizations denied exempt status as commercial enterprises.

As respondent correctly states, petitioner's unprofitable operations in 1976 and 1977 do not constitute a history of nonprofitability sufficient to serve as evidence of lack of commercial purpose. *Golden Rule Church Ass'n. v. Commissioner*, 41 T.C. 719 (1964). Respondent cannot, however, rely solely on this point to prove the contrary.

Respondent has stressed that petitioner, like organizations denied tax-exempt status, sells the bulletin at subscription rates. Yet these nonexempt organizations did not, like petitioner, charge rates set below cost.[4] The American Institute for Economic Research, for example, received fees for periodicals and investment advice services which were well above costs of production. *American Institute for Economic Research v. United States*, 302 F.2d 934, 938 (Ct. Cl. 1962), cert. denied 372 U.S. 976 (1963). Other organizations sold books at a price set to return a profit. *Fides Publishers Ass'n. v. United States*, 263 F.Supp. 924, 929 (N.D. Ind. 1967); *Christian Manner International, Inc. v. Commissioner*, 71 T.C. 661 (1979). Relying in part on the factor of fees set to cover costs and yield a 10.8-percent profit, this Court held nonexempt an organization which provided manage-

---

[4]When the commercial aspect is incidental to an exempt purpose, this Court has allowed tax-exempt status to organizations selling a product above cost. *Pulpit Resource v. Commissioner*, 70 T.C. 594, 611 (1978).

rial and consulting services to nonprofit organizations. *B.S.W. Group, Inc. v. Commissioner*, 70 T.C. 352, 359 (1978).

Both this Court and the Commissioner have recognized, however, that providing services or publications at prices below cost is a factor to be taken into account. In *B.S.W. Group, Inc. v. Commissioner, supra* at 359, the Court pointed out that "it does not appear that petitioner ever plans to charge a fee less than 'cost.'" In Rev. Rul. 72–369, 1972–2 C.B. 245, 246, the Commissioner stated that "Furnishing the services at cost lacks the donative element necessary to establish this activity as charitable" and distinguished the case of a similar organization on the ground that its fees were "substantially less than cost."

In granting exemptions, respondent has attached significance to the factor of pricing below cost. In Rev. Rul. 68–306, 1968–1 C.B. 257, the Commissioner, ruling exempt an organization which published a newspaper with a religious orientation, mentioned that subscription and advertising revenue did not cover costs of operations. In Rev. Rul. 67–4, 1967–1 C.B. 121, the Commissioner distinguished another organization which sold a journal containing abstracts of articles about physical and mental disorders from an ordinary commercial publisher because the price at which the journal was sold was sufficient to recover only part of the associated expenses. In finding these organizations not commercial, respondent thus made no distinction between them and organizations distributing free publications, such as the journal containing scientific and medical abstracts described in Rev. Rul. 66–147, 1966–1 C.B. 137.

Other factors support the conclusion that petitioner does not operate in an ordinary commercial manner. It spent only $23.20 on advertising in its fiscal year ended August 31, 1976, and its bulletin sells no advertising space. Compare *Fides Publishers Ass'n. v. United States, supra* at 930–931. The amount petitioner spends on advertisements is insignificant even in comparison with its small budget. While the sale of advertising space will not automatically disqualify a journal from tax-exempt status (Rev. Rul. 68–306, 1968–1 C.B. 257), the absence of advertisements in the bulletin underscores petitioner's lack of commercial intent. Further, petitioner does not pay or receive royalties or obtain copyrights; these are practices associated with commercial publishing. *Fides Publishers Ass'n. v. United States, supra*

(royalties paid). We find that petitioner is not operated as a commercial venture.

### 3. *Respondent's New Grounds for Denial of the Exemption*

For the first time in his reply brief, respondent argues that petitioner has not shown that the bulletin is the product of trained educators or that it meets the requirement of the regulation that, on matters of opinion, it must present "a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion." Sec. 1.501(c)(3)–1(d)(3)(i)(*b*), Income Tax Regs. In this connection, respondent argues that the materials which petitioner translates have a leftist bias and do not present a balanced view of the issues with which they deal.

This argument comes too late. Petitioner has had no opportunity to answer it with factual data. Although, as pointed out above, petitioner states that "It strives to preach no particular view," there is nothing in the administrative record to suggest that this issue was raised while the Internal Revenue Service was considering the case. Consequently, petitioner had no occasion to furnish material on the training of its personnel. While the administrative file contains copies of five issues of the bulletin, there is nothing in the administrative record to indicate that these bulletin issues are typical or that the points of view expressed in the articles appearing in them were not counterbalanced in terms of the viewpoints they express by articles in other issues of the bulletin.

In such circumstances it would be inappropriate for the Court to consider this new argument. See *Schuster's Express, Inc. v. Commissioner,* 66 T.C. 588, 593 (1976), affd. 562 F.2d 39 (2d Cir. 1977), and cases cited.[5] Accord, *Goodspeed Scholarship Fund v. Commissioner,* 70 T.C. 515, 521–525 (1978). Furthermore, the legislative history of section 7428 indicates that Congress intended a court to base its decision only upon theories advanced in the Internal Revenue Service notice or at trial. H. Rept. 94–658, 94th Cong., 1st Sess. (1975), 1976–3 C.B. (Vol. 2) 977.

Moreover, even if we should consider the argument, we would

---

[5]This conclusion is entirely consistent with the rule that, in an appropriate case, the Commissioner's position may be sustained on grounds other than the reasons argued by the parties. See *Wilkes-Barre Carriage Co. v. Commissioner,* 39 T.C. 839, 845 (1963), affd. 332 F.2d 421 (2d Cir. 1964).

hold for petitioner. Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure, states that "The burden of proof shall be upon the respondent as to any ground upon which he relies and which is not stated in the notice of determination." Rule 213(a)(2) of those Rules provides that "the answer shall contain a clear and concise statement of every ground, together with the facts in support thereof, on which the Commissioner relies and has the burden of proof."

Since the record contains only five issues of the bulletin and the only direct evidence on the question is petitioner's statement that it strives to "preach no particular view," respondent has not, in our opinion, carried his burden of proof on this new position.

To reflect the foregoing,

*Decision will be entered for the petitioner.*