COLORADO STATE CHIROPRACTIC SOCIETY, PETITIONER *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 17702-88X.          Filed October 19, 1989.

*Larry D. Harvey,* for the petitioner.
*Bruce A. Anderson,* for the respondent.

FAY, *Judge:* Respondent determined that petitioner quali-
fied for exemption from Federal income tax under section
501(a)[1] as an organization described in section 501(c)(3)
effective July 15, 1983, and as an organization described in
section 501(c)(6) for periods prior to that date. Petitioner
challenges respondent's determination, as it relates to the
periods prior to July 15, 1983, by invoking the jurisdiction
of this Court for a declaratory judgment pursuant to section
7428. The issue for decision is whether respondent was
correct in determining that petitioner did not qualify as an
organization described in section 501(c)(3) prior to July 15,
1983.

### FINDINGS OF FACT

This case was submitted for decision on the basis of the
administrative record which is incorporated by reference.
Any evidentiary facts or representations contained therein
are assumed to be true for the purpose of this proceeding.
Rule 217(b)(1). The following is disclosed in the administra-
tive record.

Petitioner, Colorado State Chiropractic Society, was orga-
nized as a nonprofit corporation on April 16, 1979, when its

---

[1]All section references are to the Internal Revenue Code of 1954 as amended, and all Rule
references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

articles of incorporation were filed with the Colorado secretary of state. Such articles of incorporation stated the purposes for which petitioner was formed as follows:

(1) to promote chiropractic health events;

(2) to perpetuate the chiropractic health message;

(3) to assist local, State and Federal governments in any and all related health programs;

(4) to sponsor educational and re-licensing seminars for chiropractors; and

(5) to inform the public of the necessity of chiropractic care.

Petitioner's bylaws, which were also enacted in April 1979, provided:

No part of the net earnings of the corporation shall inure to the benefit of or be distributable to its members, directors, officers, or other private persons, except that the corporation shall be authorized and empowered to make payments and distributions in furtherance of its purposes. No substantial part of the activities of the corporation shall be the carrying on of propaganda or otherwise attempting, to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these articles, the corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal Income Tax under Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law) or (b) by a corporation, contributions to which are deductible under Section 170(c)(2) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law).

Upon the dissolution of the corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the corporation, dispose of all of the assets of the corporation exclusively for the purposes of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, educational, religious, or scientific purposes as shall at the time qualify as an exempt organization or organizations under Section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law), as the Board of Directors shall determine. Any of such assets not so disposed of shall be disposed of by the District Court of the County in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said Court shall determine, which are organized and operated exclusively for such purposes.

Although petitioner was organized in 1979, it did not carry on any activities until the following year. In 1980, petitioner conducted its first annual convention at which it offered to its members educational seminars concerning the art of chiropractic. Such seminars were attended by petitioner's members in order that they could fulfill certain educational requirements imposed upon chiropractors by the State of Colorado. Similar annual seminars were conducted by petitioner during 1981, 1982, and 1983. Such seminars enabled their attendees to earn up to 15 hours of continuing professional education credit for purposes of meeting State law requirements. See sec. 12-33-116, Colorado Revised Statutes (1985). All such seminars were accredited by the Colorado State Board of Chiropractic Examiners.

Also during 1980 through 1983, petitioner made available to its members the use of a Mobile Educational Unit (MEU) which is alleged to have been given as a gift by Dr. Alvin Stjernholm (Stjernholm) to petitioner in 1980.[2] The MEU consisted of a semi-tractor and a 40-foot trailer. The trailer portion was divided into four sections. In such sections were exhibits concerning the history and art of chiropractic, the effects of poor posture, and the use of X-rays in diagnosing illness. Literature concerning chiropractic health care was provided to visitors of the MEU.

Stjernholm had full responsibility for the storage, repair, and maintenance of the MEU as well as for scheduling the use of the MEU. Members of petitioner contacted Stjernholm and requested that the MEU be made available to them for specific dates and times. Stjernholm then arranged for the delivery and operation of the MEU as requested. Neither petitioner nor Stjernholm charged petitioner's members for the use of the MEU. Expenses incurred in connection with such use were born entirely by Stjernholm. Petitioner paid none of such expenses. The administrative record contains approximately 30 letters in which petitioner's members requested the use of the MEU. A majority of such requests for the use of the MEU were in connection with open houses or grand openings held by the requesting members' chiropractic offices.

---

[2] See *Stjernholm v. Commissioner,* T.C. Memo. 1989-563, where we find that such gift was not made.

At some point in time after filing its articles of incorporation, the organizers of petitioner realized that petitioner had failed *to apply to respondent for recognition* that petitioner was an organization exempt from Federal income taxation. To cure such oversight, petitioner filed an Application for Recognition of Exemption Under Section 501(a) (Form 1024) with respondent on November 15, 1982. On such Form 1024, petitioner indicated that it was applying for exemption under section 501(c)(6), as a "Business League, Chamber of Commerce, etc." (501(c)(6) status). On April 4, 1983, respondent granted petitioner its requested 501(c)(6) status effective from the date of petitioner's incorporation.

Thereafter, petitioner came to realize that it would be more desirable to be granted exempt status as an organization described in section 501(c)(3) (501(c)(3) status)[3] rather than as an organization described in section 501(c)(6). To eliminate the slightest doubt in the eyes of respondent as to petitioner's status as a 501(c)(3) organization, petitioner amended its articles of incorporation on July 19, 1983. Such amendments were made in order that petitioner could clarify that the purposes for which petitioner was formed included the provisions contained in its bylaws, as well as those in the original articles of incorporation. After amendment, petitioner's articles of incorporation provided as follows:

a. Said corporation is organized exclusively for charitable, educational, and scientific purposes, including, for such purposes, the making of distributions to organizations that qualify as exempt organizations under section 501(c)(3) of the Internal Revenue Code of 1954 (or corresponding provision of any future United States Internal Revenue Law).

b. No part of the net earnings of the corporation shall inure to the benefit of, or be distributable to its members, trustees, officers, or other private persons, except that the corporation shall be authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of the purposes set forth in Article Third hereof. No substantial part of the activities of the corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the corporation shall not participate in, or intervene in (including the publishing or distribution of statements) any political campaign on behalf of any candidate for public office. Notwithstanding any other provision of these articles, the corpora-

---

[3]The relative advantages petitioner would enjoy under sec. 501(c)(3) as opposed to sec. 501(c)(6) are irrelevant for purposes of this opinion.

tion shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law) or (b) by a corporation, contributions to which are deductible under section 170(c)(2) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law).

c. Upon the dissolution of the corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the corporation, dispose of all of the assets of the corporation exclusively for the purposes of the corporation in such manner, or to such organization or organizations organized and operated exclusively for charitable, educational, religious, or scientific purposes as shall at the time qualify as an exempt organization or organizations under section 501(c)(3) of the Internal Revenue Code of 1954 (or the corresponding provision of any future United States Internal Revenue Law), as the Board of Directors shall determine. Any such assets not so disposed of shall be disposed of by the Court of Common Pleas of the county in which the principal office of the corporation is then located, exclusively for such purposes or to such organization or organizations, as said court shall determine, which are organized and operated exclusively for such purposes.

Thus, after being amended, petitioner's purposes as stated in its amended articles of incorporation were substantively identical to those in its bylaws enacted contemporaneously with its original articles of incorporation.

On October 12, 1983, petitioner filed with respondent an Application for Recognition of Exemption Under Section 501(c)(3) (Form 1023). That form was returned to petitioner, however, on October 18, 1983, as it was incomplete. Petitioner later completed the Form 1023 and resubmitted the same to respondent on November 3, 1983. Petitioner's Form 1023 requested that petitioner be recognized as an organization described in section 501(c)(3) retroactive to the date of petitioner's incorporation.

In response to petitioner's resubmitted application for retroactive 501(c)(3) status, respondent proposed, by letter dated December 14, 1984, to continue petitioner's 501(c)(6) status, and to deny petitioner its requested 501(c)(3) status. Such letter explained respondent's reasons for denying petitioner its requested 501(c)(3) status as follows:

Based on the application filed and as a result of our examination, we conclude that more than an insubstantial part of your activities are not in furtherance of a section 501(c)(3) exempt purpose.

On January 11, 1985, petitioner filed a protest to such proposed determination with its key district director.

After additional communication between petitioner and respondent, petitioner's case was referred to respondent's appeals office for consideration. On June 13, 1986, respondent's appeals office issued a second determination which, in relevant part, provided:

This letter revokes the proposed adverse letter issued to you by your key District Director and reflects our consideration of your appeal. Based on information supplied, and assuming your operation will be as stated in your application for recognition of exemption [Form 1023], we have determined you are exempt from Federal income tax under section 501(c)(3) of the Internal Revenue Code, effective July 15, 1983.

Respondent's letter gave no reason for his denial to petitioner of 501(c)(3) status for the periods prior to July 15, 1983.

Petitioner next appealed respondent's denial of retroactive 501(c)(3) treatment, for the periods prior to July 15, 1983, to respondent's national office. The review conducted by respondent's national office was with respect to petitioner's satisfaction of the substantive requirements imposed by section 501(c)(3).

On April 13, 1988, respondent's National Office sent a final determination letter to petitioner concluding that petitioner would be granted 501(c)(6) status for periods prior to July 15, 1983, and 501(c)(3) status for periods thereafter. Respondent explained his final adverse determination as follows:

This adverse determination is made, [sic] because prior to [July 15, 1983], you were not organized or operated exclusively for exempt purposes within the meaning of section 501(c)(3)- of the Internal Revenue Code. Further, based upon the application filed and as a result of the examination, it has been concluded that you have devoted more than an insubstantial part of your activities to purposes and activities which are not in furtherance of an Internal Revenue Code section 501(c)(3) exempt purpose.

Upon receipt of such adverse determination, petitioner had exhausted its administrative remedies. Thereafter, petitioner filed its petition for declaratory judgment.

## OPINION

Our function in this proceeding is to decide whether respondent was correct in determining that, for periods prior to July 15, 1983, petitioner did not qualify as an organization described by section 501(c)(3),[4] but rather that petitioner was an organization described by section 501(c)(6).[5] Petitioner has the burden of proving respondent's final adverse determination incorrect. *Hancock Academy of Savannah, Inc. v. Commissioner,* 69 T.C. 488, 492 (1977); Rule 217(c)(2)(i).

In order to attain 501(c)(3) status, an organization must be *both* organized (organizational test) and operated (operational test) exclusively for one or more of the exempt purposes specified in such section. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. We find that petitioner has sustained its burden in showing that it met both of these tests.

### *Organizational Test*

Section 1.501(c)(3)-1(b)(1), Income Tax Regs., provides:

*In general.* (i) An organization is organized exclusively for one or more exempt purposes only if its articles of organization * * * :

(a) Limit the purposes of such organization to one or more exempt purposes; and

(b) Do not expressly empower the organization to engage, otherwise than as an insubstantial part of its activities, in activities which in themselves are not in furtherance of one or more exempt purposes. [Emphasis in original.]

---

[4]Sec. 501(c)(3) describes:

Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of (or in opposition to) any candidate for public office.

[5]Sec. 501(c)(6) describes:

Business leagues, chambers of commerce, real-estate boards, boards of trade, or professional football leagues (whether or not administering a pension fund for football players), not organized for profit and no part of the net earnings of which inures to the benefit of any private shareholder or individual.

In this context, section 1.501(c)(3)-1(b)(2), Income Tax Regs., provides:

the term "articles of organization" or "articles" includes the trust instrument, the corporate charter, the articles of association, or any other written instrument by which an organization is created.

Further, an organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to such exempt purposes. In this regard, the regulations provide:

An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. * * * [Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.]

Respondent determined that, prior to July 15, 1983, petitioner was not organized exclusively for one or more of the exempt purposes condoned by section 501(c)(3). Respondent bases his position upon two grounds. First, respondent argues that petitioner failed the organizational test prior to July 15, 1983, because, respondent asserts, the purposes for petitioner's existence, as stated in its original articles of incorporation, were not sufficiently limited to section 501(c)(3) exempt purposes. Second, respondent argues that petitioner also fails the organizational test because, respondent asserts, petitioner's assets were not dedicated to exempt purposes within the meaning of section 1.501(c)(3)-1(b)(4), Income Tax Regs., until after its articles of incorporation were amended.[6] Petitioner disagrees with respondent in all respects.

The parties' disagreement stems from their respective positions as to what we should consider when determining whether an organization is organized exclusively for one or more exempt purposes. Based on a strict application of the above-quoted regulations, respondent asserts that, in deter-

---

[6]Respondent did not rely on sec. 508(a) for purposes of denying petitioner exemption under sec. 501(c)(3) for periods prior to July 15, 1983. Accordingly, we do not consider whether respondent's adverse determination would have been proper within the context of that section.

mining the purposes for petitioner's existence and whether such purposes are exclusively exempt in nature, we should consider only petitioner's original articles of incorporation. From such a restricted review, respondent posits, petitioner's purposes are not sufficiently limited to only exempt purposes.

Petitioner asserts that our consideration should be of all surrounding facts and circumstances as such are exhibited in its administrative record. Petitioner opines that our examination should include a review of not only its original articles of incorporation, but also of all other evidence indicative of the purposes for which petitioner was formed including, specifically, petitioner's contemporaneously enacted bylaws. From such an examination, petitioner asserts, its purposes are revealed to be exclusively exempt under the statute.

We agree with petitioner. The regulations upon which respondent relies are, by their own terms, to be applied "In general." As a general rule, the regulations should not be interpreted as setting forth a test which would require an examination of *only some* of the relevant evidence, to the exclusion of other relevant evidence.

The question of whether petitioner is organized exclusively for one or more exempt purposes is purely a factual inquiry. We could not judiciously decide such a factually intensive question if we were to myopically consider *only* petitioner's original articles of incorporation, to the exclusion of all other evidence relevant to the issue. As we have previously stated:

> It is well settled that:

> The issue of "organized" * * * is primarily a question of fact not to be determined merely by an examination of the certificate of incorporation but by the actual objects motivating the organization and the subsequent conduct of the organization.

> *Taxation With Representation v. United States,* 585 F.2d 1219, 1222 (4th Cir. 1978); *Samuel Friedland Foundation v. United States,* 144 F.Supp. 74, 85 (D. N.J. 1956). * * * [*Peoples Translation Service v. Commissioner,* 72 T.C. 42, 48 (1979).]

In the case at bar, petitioner's original articles of incorporation could be interpreted as not preclusive of commercial, nonexempt purposes. Nevertheless, the mere

existence of power to engage in activities other than those set forth in section 501(c)(3) does not necessarily require a finding that the organizational test has not been met. *Peoples Translation Service v. Commissioner, supra* at 48. So long as it is not expressly empowered to engage in nonexempt purposes, an organization may still meet the organizational test even if its purposes indirectly encompass, to an insubstantial degree, purposes not exempt under section 501(c)(3). *Peoples Translation Services v. Commissioner, supra* at 48. This is because the word "exclusively" in the context of section 501(c)(3) means "substantially" rather than "solely" or "absolutely without exception." *Church in Boston v. Commissioner,* 71 T.C. 102, 107 (1978).

Petitioner's original articles of incorporation are not the only evidence from which petitioner's purposes might be determined. Rather, petitioner's bylaws are also indicative of the "objects motivating" petitioner and, therefore, must also be considered. Petitioner's bylaws specifically restricted petitioner to only those purposes and activities permissible under section 501(c)(3). When petitioner's original articles and contemporaneously enacted bylaws are read together, we find that petitioner's purposes were, within the meaning of section 501(c)(3), limited to one or more exempt purposes from the date of its incorporation.

Finally, to determine whether petitioner meets the organizational test we must also consider whether, upon dissolution or otherwise, petitioner's assets were dedicated to its exempt purposes during the period prior to April 15, 1983, within the meaning of section 1.501(c)(3)-1(b)(4), Income Tax Regs. For these purposes, that regulation provides that the dedication of assets may occur "by reason of a provision of the articles or by operation of law." Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs.

Respondent determined that petitioner's original articles did not provide the proper dedication of petitioner's assets. With this we agree. Petitioner's original articles did not contain a provision concerning asset distribution upon dissolution. Respondent also determined, however, that petitioner's assets were not appropriately dedicated by operation of law. With this we disagree.

Colorado law provides that upon dissolution corporate assets which are not otherwise dedicated to "charitable, religious, eleemosynary, benevolent, educational, or similar purposes, * * * shall be distributed in accordance with the provision of the articles of incorporation *or the bylaws.*" Colo. Rev. Stat. 7-26-103 (emphasis added). Thus, for purposes of determining whether petitioner's assets are appropriately dedicated, we may also consider the provisions for asset distribution made in petitioner's bylaws. We hold that petitioner's above-quoted bylaws do provide the appropriate dedication of petitioner's assets, upon dissolution, to petitioner's exempt purposes.

Respondent has not argued that the method of distribution of assets set forth in petitioner's bylaws does not satisfy the regulations. In fact, respondent accepted such method of distribution once it was set forth in petitioner's articles, when they were amended on April 19, 1983, to include the language in the bylaws. Respondent found the method of asset distribution to be satisfactory for purposes of section 1.501(c)(3)-1(b)(4), Income Tax Regs., when respondent granted petitioner section 501(c)(3) status for periods after April 15, 1983. Respondent's only objection to the dedication of assets provision originally contained only in petitioner's bylaws has been that such provision was not made in petitioner's articles prior to April 19, 1983.

For purposes of this case, however, it is not necessary that the dedication of assets provision be made in petitioner's articles. By reason of Colorado law, dedication of asset provisions found in corporate bylaws are given the same effect as if the provisions were included in the corporate articles. For this reason, we agree with petitioner that it meets the requirements of section 1.501(c)(3)-1(b)(4), Income Tax Regs.

## Operational Test

Generally, an organization will be regarded as being operated exclusively for one or more exempt purposes, within the meaning of section 501(c)(3), only if it engages primarily in activities which accomplish the purposes exempt under that section. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. An organization will not satisfy the operational test

of section 501(c)(3) if more than an insubstantial part of its activities are not in furtherance of an exempt purpose. Sec. 1.501(c)(3)-1(c), Income Tax Regs. Further, an organization will fail the operational test if its net earnings inure, in whole or part, to the benefit of private individuals. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs.

Respondent's final adverse determination denying petitioner 501(c)(3) status prior to July 15, 1983, does not rely upon a finding of any improper private inurement. Accordingly, we only need determine whether more than an insubstantial part of petitioner's activities were in furtherance of nonexempt purposes.

Educational purposes are one of the types of purposes exempt under section 501(c)(3). Educational purposes are defined as:

(a) The instruction or training of the individual for the purpose of improving or developing his capabilities; or

(b) The instruction of the public on subjects useful to the individual and beneficial to the community.

An organization may be educational even though it advocates a particular position or viewpoint so long as it presents a sufficiently full and fair exposition of the pertinent facts as to permit an individual or the public to form an independent opinion or conclusion. * * * [Sec. 1.501(c)(3)-1(d)(3), Income Tax Regs.]

Petitioner's activities, prior to July 15, 1983, consisted of its annual educational/relicensing seminar and its making the MEU available to its members. We find that petitioner's annual seminars were conducted solely for exempt educational purposes within the meaning of section 501(c)(3) and section 1.501(c)(3)-1(d)(3), Income Tax Regs. Accordingly, we need only review petitioner's activities with respect to the MEU to determine if such activities were in furtherance of nonexempt purposes. If they were, we must then ask whether such nonexempt activities constituted more than an insubstantial portion of petitioner's overall activities.

The MEU was originally designed and built to convey information to the public concerning chiropractic health care. Accordingly, petitioner argues that its activities with respect to the MEU were solely in furtherance of its exempt educational purposes. Respondent argues that the MEU was used for advertising the chiropractic services of petitioner's

members and that such use was in furtherance of nonexempt, commercial purposes. We agree with respondent.

The administrative record reflects that the MEU was used, during the 30 months preceding July 15, 1983, approximately 30 times by petitioner's members. A majority of such uses were in connection with grand openings or open houses held by petitioner's members' individual chiropractic practices. Such uses were closely connected to the promotion of the particular services of petitioner's members. Such uses were not related to the general imparting of information to the public about the importance of chiropractic health care. Because such promotion of the practices of petitioner's members is a commercial purpose and is not a purpose exempt under section 501(c)(3), we find that the MEU was primarily used for furtherance of nonexempt purposes. Such nonexempt activities by petitioner will taint petitioner, and cause it to not be an organization described by section 501(c)(3), however, only if those activities were more than an insubstantial part of petitioner's overall activities. *Better Business Bureau of Washington, D.C. v. United States,* 326 U.S. 279 (1945).

Petitioner's activities with respect to the MEU were limited, prior to July 15, 1983, to making the vehicle available to its members for their use. Petitioner did not incur any expenses with respect to the operation of the MEU, nor did petitioner ever receive any income from the MEU's use. Stjernholm was responsible for all scheduling, maintenance, repair, and operation of the MEU, when one of petitioner's members wanted the MEU made available to them. Such services were performed by Stjernholm without charge to petitioner. Because petitioner's activities with respect to the MEU were so limited, we find that such activities were insubstantial. Accordingly, we find that respondent erred in determining that petitioner was not, prior to July 15, 1983, operated exclusively for one or more exempt purposes, within the meaning of section 501(c)(3).

To reflect the foregoing,

*An appropriate decision will be entered.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT , PARR, WILLIAMS, WELLS, RUWE, WHALEN, and COLVIN, *JJ.,* agree with this opinion.